**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 95-50324**
_____

**DORA COLON,**

**Plaintiff - Appellee,**

**versus**

**LEAGUE OF UNITED LATIN AMERICAN CITIZENS;**
**LEAGUE OF UNITED LATIN AMERICAN CITIZENS COUNCIL #616;**
**GARCIA PROPERTIES, INC.; WESTSIDE CATHOLIC SCHOOL,**

**Defendants**
**and**

**PAUL RODRIGUEZ,**

**Defendant - Appellant.**

_____

**Appeal from the United States District Court**
**for the Western District of Texas**
**(SA-94-CA-340)**
_____

June 12, 1996

Before POLITZ, Chief Judge, WIENER and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

For this action under the Americans with Disabilities Act, 42 U.S.C. § 12101 _et seq._ (ADA), the controlling issue is whether Paul Rodriguez was an "operator", pursuant to 42 U.S.C. § 12182(a). He challenges the injunctive relief and attorney's fees awarded after a bench trial to Dora Colon, who sued him and others on various bases, as a result of her disqualification from a bingo game.

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Because the district court held erroneously that Rodriguez was an "operator" under the ADA, we **REVERSE** and **RENDER**.

I.

Colon, who is visually impaired, claimed, *inter alia*, that the defendants violated the ADA by failing to accommodate her disability. Only the claim against Rodriguez is at issue here. The district court made the following findings of fact, which are not challenged on appeal.

On May 14, 1992, Colon asked her paid social companion, Hannah Trad, to accompany her to the Plaza Del Ray Ballroom in San Antonio, Texas, where Colon wanted to play bingo. Colon required Trad's assistance because Colon is visually impaired. Upon their arrival, Colon informed the cashier of her disability; inquired whether braille cards were available, and was told that they were not; and inquired whether assistance to a visually impaired player was provided, and was informed that it was not. Colon then purchased one bingo package for herself, intending to play with Trad's assistance.

During the last game of the evening, Colon had a "bingo"; but, when Trad took Colon's card to the caller, in order for him to verify Colon's win, the caller announced instead that Colon and Trad were disqualified for sharing a card ("splitting") in violation of the rules. Colon asked to speak with "the person in charge" and was directed to a window, where she spoke with Rodriguez.

Although Colon explained that she had not been "splitting" her card, but rather that, due to her visual impairment, could play only with the assistance of another person, Rodriguez informed her that he represented LULAC #616 and that a decision had been made to disqualify her because two people were playing her card. Upon Colon advising Rodriguez that the ADA required that she be allowed to collect her prize money, he refused.

For the bingo session in issue, Westside Catholic School held the license from the Texas Alcoholic Beverage Commission. Garcia Properties was the lessor of the premises (Plaza Del Ray), but did not operate, nor profit from, the bingo game. The various non-profit organizations that are licensed on a specific night to operate bingo hired Paul Rodriguez as their bookkeeper; and although he was on the premises each night to interview prospective employees and sign paychecks, he was "employed" each night by the non-profit organization holding the license. The house rules at the Plaza Del Ray prohibit "splitting" a bingo package.

This action was filed against Westside Catholic School, Rodriguez, and others. Shortly before trial, however, Colon dismissed Westside Catholic School from the action. At the conclusion of a two day-bench trial, the district court held that, for purposes of the ADA, Rodriguez was an "operator" of the bingo game. It awarded Colon injunctive relief and attorney's fees against Rodriguez.

II.

Rodriguez maintains that he cannot be held liable for violation of the ADA, because he did not "operate" the bingo game.[1] Whether he is an "operator" for purposes of assessing ADA liability is a question of law, subject to our plenary review. *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063, 1065 (5th Cir.), *cert. denied*, __ U.S.__, 116 S. Ct. 704 (1996).

Title III of the ADA addresses discrimination on the basis of disability in public accommodations operated by private entities. 42 U.S.C. §§ 12181 *et.seq*. Claims under this part of the ADA may be made against a person who "owns, leases (or leases to), or operates a place of public accommodation". 42 U.S.C. § 12182(a). The statute does not define the term "operate"; but, in this context, our court applied its ordinary meaning -- "to put or keep in operation", "[t]o control or direct the functioning of", or "[t]o conduct the affairs of; manage". *Neff*, 58 F.3d at 1066. In accordance with our precedent, to be an "operator" requires more than simply controlling some aspect of a public accommodation. Rather, the person must have control over the modification sought by the plaintiff. *Id*. at 1067.

---

[1]    At oral argument, in addition to this issue, Rodriguez raised the possibility that the ADA could not apply to these events, which he argued predated the effective date of the statute. Obviously, were this the case, the district court would have lacked jurisdiction. However, the events in issue occurred in May 1992, and the effective date of Title III of the ADA, pursuant to which Colon's claim is brought, is January 1992 (18 months after the date of enactment of the ADA). *See* Pub.L. 101-336 § 310(a).

The modification at issue was exemption from the house rules, which forbid more than one player to play from a single package. To be an operator in this instance, Rodriguez must have had the authority to allow Colon to play bingo with Trad's assistance, even though the rules prohibited this.

The uncontroverted evidence is that the bingo licensee for the session in issue, Westside Catholic School, retained sole control over modifications to the house rules. *See also*, Bingo Enabling Act, TEX. REV. CIV. STAT. ANN. art. 179d § 19 (West 1996) (defining persons who may "operate" a game of bingo). The record does not allow a conclusion that Rodriguez had personal authority to alter the rules in order to accommodate Colon's disability. Further, a showing that Rodriguez exercised control as Westside's agent would be insufficient, because, as noted, Colon dismissed Westside, the licensed bingo operator, from the action and proceeded on the theory that Rodriguez, Garcia Properties, and LULAC actually had control over every aspect of the game.

## III.

In sum, Rodriguez's activities in connection with the bingo game are insufficient to bring him within the scope of the ADA term "operates". Accordingly, the judgment is **REVERSED**, and judgment is **RENDERED** for Paul Rodriguez.

*REVERSED and RENDERED*